## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Lee A. Eckford, | : | Case No. 3:04 CV 7083 |
| Plaintiff, | : | |
| vs. | : | |
| City of Fremont, *et al.,* | : | MEMORANDUM DECISION AND ORDER |
| Defendants. | : | |

The parties have consented to have the undersigned Magistrate enter judgment in this civil rights case filed pursuant to 42 U.S.C. § 1983 and OHIO REV. CODE § 4112.  This Court has jurisdiction pursuant to 28 U. S. C. §§ 1331 and 1343.  Pending is Defendants' Motion for Summary Judgment (Docket No. 15) to which Plaintiff filed an Opposition (Docket No. 23) and Defendants filed a Reply (Docket No. 26).  For the reasons that follow, Defendants' Motion for Summary Judgment is granted.

## FACTUAL BACKGROUND

Plaintiff, a black male, is a resident of Fremont, Ohio (Docket No. 1, <u>Parties</u>, ¶ 1).  At all times relevant

to these proceedings, Defendants Lester W. Daniels, James Reaster and Ken Buchele were employed as police officers by the Fremont and Sandusky, Ohio, Police Departments.  Defendant Buchele has been a police officer since 1991, Defendant Daniels was employed in that capacity in May 1997, and Defendant Reaster was hired on a full-time basis by the Fremont, Ohio, Police Department in 1999 (Docket No. 16, Exhibit B, Docket No. 21, p. 5 & Docket No. 22, p. 9).  Defendant Buchele is the supervisor of the canine unit (Docket No. 16, Exhibit B, ¶ 3).

On February 28, 2002, Plaintiff and a friend went bowling in Port Clinton, Ohio (Docket No. 17, p. 20).  Upon returning to Fremont, Ohio, Plaintiff had a beer at the Office Bar (Docket No. 17, pp. 23, 24).  He left the Office Bar around 1:30 A.M. and went to Anthony's Bar and Grill (Anthony's)[1].  There he consumed a second beer (Docket No. 17, p. 27).  Plaintiff left Anthony's at approximately 2:30 A.M. (Docket No. 17, p. 29).  At approximately 2:36 A.M., Defendant Daniels stopped Plaintiff 's vehicle as it was traveling south on South Front Street, Fremont Ohio (Docket No. 17, pp. 36-37 & Docket No. 1, <u>Cause of Action</u>, ¶ ).  According to Defendant Daniels, Plaintiff's vehicle did not have an illuminated license tag in violation of the applicable Ohio statutes[2].  Defendant Daniels "signaled" that he was stopping a vehicle.  Defendants Reaster and Buchele heard the call and voluntarily arrived at the location of the stop (Docket No. 21, pp. 6, 8; Docket No. 16, Exhibit B, ¶ 8).

---

[1]

Anthony's is a bar located on State and Elliott Streets in Fremont, Ohio (Docket No. 1, p. 29 & Defendants' Exhibit A).  It is patronized primarily by African Americans (Docket No. 17, p. 58).

[2]

Either a tail light or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate, when such registration plate is required, and render it legible from a distance of fifty feet to the rear.  Any tail light, together with any separate light for illuminating the rear registration plate, shall be so wired as to be lighted whenever the headlights or auxiliary driving lights are lighted, except where separate lighting systems are provided for trailers for the purpose of illuminating such registration plate.  Ohio rev. code § 4513.05 (Thomson/West 2005).

Defendant Reaster arrived on the scene first.  Defendant Daniels had already approached Plaintiff's vehicle so Defendant Reaster offered his assistance (to Defendant Daniels).  Defendants Daniels and Reaster both noted that Plaintiff's eyes were glassy, hazy and red and his speech was slurred (Docket No. 21, pp. 7-8; Docket No. 22, p. 38).  Defendant Reaster recalled that Plaintiff was yelling at Defendant Daniels (Docket No. 21, p. 9).  Defendant Daniels confirmed that Plaintiff was verbally abusive and spoke "very loudly" (Docket No. 16, Exhibit A).

When Plaintiff refused Defendant Daniels' request to submit to the field sobriety tests, Defendant Daniels placed Plaintiff under arrest for driving under the influence of alcohol[3] (Docket No. 16, Exhibit A).  Plaintiff claims that Defendant Daniels asked him, in "a nasty way," to exit his vehicle.  Plaintiff initially hesitated but ultimately complied with Defendant Daniels' request (Docket No. 17, pp. 38-39).  Defendant Daniels contends that Plaintiff refused his request to exit so he and Defendant Reaster removed Plaintiff from his vehicle, restrained him and escorted him to the rear of his vehicle (Docket No. 22, pp. 40-41).  While being handcuffed by Defendant Daniels, Plaintiff claims he was forcefully bent over his vehicle, jerked from the vehicle hood and placed on the rear seat of Officer Daniels' car (Docket No. 17, pp. 43-44).

While Defendants Daniels and Reaster were restraining Plaintiff, Defendant Buchele voluntarily arrived at the scene to offer his assistance (Docket No. 16, Exhibit B, ¶ 8).  Accompanying Defendant Buchele was Canine Lord, a narcotic detection dog[4].  After arrest and placing him in the rear of Defendant Daniels' vehicle,

---

[3]

     (A) (1) No person shall operate any vehicle, . . . . ., if, at the time of the operation any of the following apply:
         (a)      The person is under the influence of alcohol, a drug of abuse, or a combination of them.
     OHIO REV. CODE § 4511.19 (Thomson/West 2005).

[4]

     Defendant Buchele claims that Canine Lord is an experienced canine and that he has been teamed with Lord since 1999.  Canine Lord and Defendant Buchele obtained 220 hours of training in patrol and narcotic detection.  Specifically Lord

Defendant Buchele and Canine Lord walked around Plaintiff's vehicle.  Canine Lord alerted to the odor of drugs on the passenger side door seam near the bottom of Plaintiff's vehicle door (Docket No. 16, Exhibit B, ¶ 9). In response to the canine alert, Defendants Daniels and Reaster searched Plaintiff's truck (Docket No. 16, Exhibit B, ¶ 10).  Defendant Reaster found fragments on which he performed a field test for crack cocaine (Docket No. 21, p. 12).  The test results showed the presence of crack cocaine[5] (Docket No. 21, p. 13). Plaintiff claims that Defendant Daniels denied his request to view the test results (Docket No. 17, p. 49).

Defendant Daniels transported Plaintiff to the Fremont Police Department for booking and his car was impounded.  Plaintiff refused to submit to fingerprinting or photographing (Docket No. 22, p. 58).  He was charged with possession of crack cocaine, license plate violation, failure to wear a seatbelt, driving under the influence of alcohol and resisting arrest (Docket No. 22, p. 54, 59).  Plaintiff's wife posted bail and Plaintiff was released from jail within six to seven hours (Docket No. 22, p. 58-59, 65).  Upon his release, Plaintiff submitted to a voluntary drug test at Memorial Hospital, Fremont, Ohio.  The results of the urine test were negative for cocaine, cannabinoids, opiates and phencyclidine (PCP) (Docket No. 23, Plaintiff's Exhibit 1).

Plaintiff was indicted on possession of cocaine with specific vehicle forfeiture on April 19, 2002 (Docket No. 16, Exhibit D).  The arrest and indictment were published in *The News Messenger*, a local Fremont daily newspaper (Docket No. 22, p. 60).  On August 21, 2002, the criminal case against Plaintiff was dismissed (Docket No. 16, Exhibits E).  On August 23, 2002, Plaintiff paid a fine of $75 for a moving violation (Docket

---

is trained to detect cocaine, heroin, marijuana, and methamphetamines (Docket No. 16, Exhibit B).

[5]      Defendant Reaster testified that the remaining fragments he gathered from the vehicle that were sent to the Bureau of Criminal Investigation tested negative for crack cocaine (Docket No. 21, p. 13).

4

No. 16, Exhibit G).  Plaintiff's truck was released from impound on September 26, 2002 (Docket No. 17, p. 39).

Plaintiff filed this lawsuit alleging that Defendants, in their individual capacities, conspired to (1) violate his Fourth Amendment right to be protected from unreasonable stops, searches and seizures, (2) violate his Fourteenth Amendment "equal protection" privilege against racially discriminatory targeting by law enforcement officers commonly known as "racial profiling"; (3) illegally arrest and detain him without probable cause; (4) maliciously prosecute him; (5) slander his good name, and (6) cause mental and emotional distress.  As a result of Defendants' illegal acts, Plaintiff has been deprived the use of his vehicle for approximately five months, incurred legal expenses, lost wages and the cost of supplemental transportation and been subjected to the humiliation attendant with allegations of criminal activity (Docket No. 1).

Defendants claim that they are entitled to judgment as a matter of law.  Specifically, Defendants contend that the traffic stop and subsequent arrest were valid, the search was legally permissible, there was probable cause to arrest Plaintiff for felony drug possession and Plaintiff's state law claims are barred by applicable statute of limitations.  Defendants contend that they are entitled to immunity from liability for any claims for which judgment is not awarded as a matter of law (Docket No. 15).

## SUMMARY JUDGMENT STANDARD

The summary judgment procedure is designed to dispose of cases wherein there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56.  Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, with the affidavits if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995)

(*citing LaPointe v UAW, Local 600*, 8 F.3d 376, 378 (6ᵗʰ Cir. 1993)).

The moving party bears the initial burden of establishing an absence of evidence to support the non-moving party's case. *Celotex Corporation v. Catrett*, 106 S. Ct. 2548, 2552-2553 (1986).  In the face of Defendant's properly supported Motion for Summary Judgment, the Plaintiff cannot rest on his or her allegations to get to the jury without significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Incorporated*, 106 S. Ct. 2505, 2510 (1986) (*citing First National Bank of Arizona v. Cities Services Co.*, 88 S. Ct. 1575, 1593 (1968)).  The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff.  *Id.* at 2512.

To oppose a motion for summary judgment successfully, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1355 (1986).  The opponent's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  *Id.*  In determining if the facts are material, the court must look to the substantive law.  The evidence of the non-movant is then taken as true and all justiciable inferences are drawn in his or her favor. *Anderson*, 106 S. Ct. at 2513 (*citing Addickes v. S.H. Kress & Co.*, 90 S. Ct. 1598, 1609-1610 (1970)).  The Court must refrain from resolving conflicts in the evidence or making credibility determinations.  *Id.*  If, after deciding, the dispute about a material fact is genuine, summary judgment should be denied.

## DISCUSSION

Plaintiff alleges that under federal and state constitutions that Defendants Daniels, Reaster and Buchele conspired to violate his Fourth and Fourteenth Amendment rights when he was stopped, detained and arrested

6

without probable cause because of his race.  Plaintiff also claims that Defendants' acts caused emotional distress, that his good name was slandered and that he was falsely arrested, imprisoned, harassed and humiliated.

In their Motion for Summary Judgment, Defendant City of Fremont claims that there was no city policy or custom to inflict injury to Plaintiff.  Defendants Daniels, Reaster and Buchele argue that the initial traffic stop, continued detention and subsequent arrests were not only valid but constitutional.  In the alternative, Defendants Daniels, Reaster and Buchele claim that they are entitled to immunity.

**Federal Claims against Defendant City of Fremont**

Plaintiff claims that Defendant City of Fremont adopted and enforced a policy in which blacks who patronized Anthony's were targeted for arrest.  Defendant City of Fremont denies that such a policy exists or that Plaintiff was injured as a result of such policy.

Local governments may be properly sued for "monetary, declaratory, or injunctive relief" when they commit a constitutional tort.  *Monell v. Department of Social Security of City of New York*, 98 S. Ct. 2018, 2035 (1978).  However a local government is only liable as an entity when the government has committed the constitutional violation, not when the violation was committed by its employees.  *Pembaur v. City of Cincinnati*, 106 S. Ct. 1292, 1297-1298 (1985).  It is when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983.  *Monell*, 98 S. Ct. at 2037.  The local government's policy or custom is required to be the "moving force of the constitutional violation" in order to establish the liability of a government body under Section 1983.  *Polk County v. Dodson*, 102 S. Ct. 445, 454 (1981) (*quoting Monell*, 98 S. Ct. at 2037-38).  The requirements of *Monell* are satisfied if the

plaintiff identifies the policy, connects the policy to the city itself and shows that the particular injury was incurred because of the execution of that policy. *Garner v. Memphis Police Department*, 8 F.3d 358, 364 (6th Cir. 1993) *cert. denied*, 114 S. Ct. 1219 (1994) (*quoting Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)).

As discussed above, Plaintiff must show that such policy was the moving force behind his constitutional injury. Plaintiff contends that poorly trained Fremont, Ohio, police officers engage in situations wherein blacks are targeted for harmful and harassing treatment. However, Plaintiff's allegations fail to satisfy the *Monell* requirements. Even if Plaintiff's explanation identifying a policy is accepted as true, there is nothing in the record that connects the policy to the City of Fremont or shows that the injuries Plaintiff sustained were because city officials executed such a policy. Accordingly, summary judgment is appropriate for the City of Fremont.

### State Claims Against Defendant City of Fremont

Defendant City of Fremont is likewise immune from liability for injurious acts considered violations of Ohio law. Defendant City of Fremont is a political subdivision[6]. A political subdivision in Ohio is not liable in damages in a civil action for injury or loss to persons or property allegedly caused by an act or omission of the political subdivision in connection with a governmental function. The provision of police services is a governmental function in OHIO REV. CODE § 2744.01(C)(2)(a). OHIO REV. CODE § 2744.02(B) does not provide for liability on the part of the political subdivision for injuries caused by its police officers other than for negligent operation of a motor vehicle. OHIO REV. CODE § 2744 (B)(1) (Thomson/West 2005).

---

[6]

    OHIO REV. CODE 2744.01(F) defines a "political subdivision" as a "municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state."

8

Plaintiff has neither alleged nor proven that his injuries were the result of the negligent operation of motor vehicles. Defendant Fremont is therefore immune from liability for any injurious acts caused by Defendants Daniels, Reaster and Buchele in performing their police functions. Accordingly, summary judgment is appropriate for Defendant City of Fremont.

### Conspiracy Claim against Defendants Daniels, Reaster and Buchele

Plaintiff alleges that Defendants Daniels, Reaster and Buchele conspired to violate his Fourth Amendment rights. Defendants claim that there is nothing in the record to support Plaintiff's theory of conspiracy.

A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). There must be a single plan, a general conspiratorial objective and an overt act committed in furtherance of the conspiracy that causes injury to the complainant. *Id.* There need not be an express agreement among all of the conspirators and all of the conspirators need not know all of the details of the illegal plan or all of the participants involved. *Id.* Conspiracy claims must be pled with some degree of specificity. *Id.* (*citing Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). Vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under Section 1983. *Id.* However, circumstantial evidence is adequate proof of a conspiracy as there is rarely evidence of an express agreement among all the conspirators to conspire. *Id.* (*citing Weberg v. Franks,* 229 F.3d 514, 528 (6th Cir. 2000)).

Plaintiff claims that Defendants conspired to violate his Fourth Amendment rights by insisting that he had illegal drugs in his car or his person and by violating his right to be free from unreasonable searches and seizures. However, such allegations do not meet the requisite degree of specificity needed to sustain a Section 1983

conspiracy claim. Even if Plaintiff's allegations are deemed true, there are no material facts from which to infer that Defendants acted in concert. Plaintiff has submitted no evidence, circumstantial or otherwise, suggesting that Defendants had a single plan to stop, detain and arrest him or search his vehicle. The Magistrate, therefore, grants summary judgment for Defendants as to the Section 1983 conspiracy claim.

### Plaintiff's Equal Protection Claim against the Individual Defendants

Plaintiff alleges that Defendants Daniels, Reaster and Buchele violated his rights under the Equal Protection Clause of the United States Constitution by targeting him for a stop on the basis that he was a black male and patron of Anthony's. Defendants claim that Plaintiff is unable to make a prima facie case of racial profiling.

The Constitution prohibits selective enforcement of the law based on considerations such as race. *Farm Labor Organizing Committee v. Ohio State Highway Patrol*, 308 F. 3d 523, 533 (6th Cir. 2003). The constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause. *Id*. A claimant alleging selective enforcement of facially neutral criminal laws must demonstrate that the challenged law enforcement practice "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id.* at 533-534 (*citing Wayte v. United States*, 105 S. Ct. 1524, 1531 (1985)).

"To establish discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." *Id.* (*citing United States v. Armstrong*, 116 S. Ct. 1480, 1487 (1996)). A claimant can demonstrate discriminatory effect by naming a similarly situated individual who was not investigated or through the use of statistical or other evidence which "address[es] the crucial question of whether one class is being treated differently from another class that is otherwise similarly situated." *Id.* (*citing Chavez v. Ill. State Police*, 251 F.3d 612, 638 (7th Cir. 2001)).

10

A discriminatory purpose can be shown by demonstrating that the "decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely in spite of its adverse effects upon an identifiable group.' " *Id.* (*citing Wayte,* 105 S. Ct. at 1532); (*quoting Personnel Administrator of Massachusetts v. Feeney*, 99 S. Ct. 2282, 2296 (1979)). Determining whether official action was motivated by intentional discrimination "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* (*citing Village of Arlington Heights v. Metropolitan Housing Development Corporation,* 97 S. Ct. 555, 563 (1977)). "[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the [practice] bears more heavily on one race than another." *Id.* (*citing Washington v. Davis*, 96 S. Ct. 2040, 2048 (1976)).

Plaintiff alleged but failed to offer probative evidence that Defendants employed explicit racial criteria or engaged in racially-motivated decision making. Plaintiff testified that the police officers "sat on" the alley behind Anthony's and stopped African Americans patrons leaving Anthony's in search of drugs (Docket No. 17, p. 57). The National Association for the Advancement of Colored People (NAACP) apparently addressed the issue with the Fremont Police Department (Docket No. 17, p. 57). Plaintiff has neither identified other similarly situated blacks that have been subjected to similar treatment nor presented statistical evidence that Defendants selectively enforced the traffic/criminal laws. Defendants assert that the traffic stop, detention and arrests were not racially motivated. In support, Defendant Buchele submitted an unauthenticated exhibit on which the percentage of blacks arrested in 2002 after vehicle searches by the canine unit totaled 10.7% of the total arrests (Docket No. 16, Exhibit 1).

The Magistrate cannot infer from this evidence that Defendants' acts had a discriminatory effect over one ethnic group, namely blacks, patronizing Anthony's. Plaintiff has failed to make a prima facie claim against

11

Defendants Daniels, Reaster and Buchele for the violation of his rights under the Equal Protection Clause of the United States Constitution.

### Section 1983 Liability Claims Against Defendants Daniels, Reaster and Buchele

Plaintiff alleged that Defendants wrongfully stopped, detained and arrested him and then searched his vehicle.  Defendants claim that the stop was valid, continued detention was warranted, the arrest was constitutional and they had probable cause to search Plaintiff's vehicle.

To sustain a Section 1983 claim, plaintiff must establish that it was deprived of a right secured by the Constitution or laws of the United States, and that this deprivation was caused by a person acting under the color of state law. *Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004) (*citing Flagg Brothers v. Brooks,* 98 S. Ct. 1729, 1732 (1978); *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir.1995)).  The Fourth Amendment of the United States Constitution guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.   U. S. Cont. amend. IV.   An automobile stop is subject to this constitutional imperative and thus bound by the standard that it must not be "unreasonable" under the circumstances. *Whren v. United States*, 116 S. Ct. 1769, 1772 (1996).  The decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.  *Id.* (*quoting Delaware v. Prouse*, 99 S. Ct. 1391, 1399 (1979); *Pennsylvania v. Mimms*, 98 S. Ct. 330, 332 (1977) (per curiam)).  So long as the officer has probable cause to believe that a traffic violation has occurred or is occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment.  *United States v. Bradshaw*, 102 F. 3d 204, 210 (6th Cir. 1996) *cert. denied*, 117 S. Ct. 1453 (1997) (*quoting United States v. Ferguson*, 8 F. 3d 385, 391 (6th Cir. 1993) (the probable cause determination is predicated on what the

12

officer knew at the time that he or she made the stop)).        In this case, Defendant Daniels testified that on

the morning of the stop, he had made several stops for plate light violations[7] (Docket No. 22, p. 36).  When

he observed that Plaintiff had no visible license plate light, he initiated his overhead lights (Docket No. 22, p.

29).  Because OHIO REV. CODE § 4513.05 requires either a tail light or a separate light be placed to illuminate

the rear registration plate to render it legible from a distance of fifty feet to the rear, Defendant Daniels had

probable cause to stop Plaintiff's vehicle for an apparent violation of applicable traffic laws.  The initial stop did

not violate the Fourth Amendment.

        Armed with a reasonable basis to stop Plaintiff's vehicle, Defendants argue that continued detention was

necessary as there was an articulable suspicion that if allowed to drive, Plaintiff would engage in further criminal

activity, namely, driving under the influence of alcohol.  Plaintiff claims that after he was stopped, Defendant

Daniels illegally detained him beyond the purpose of the stop.

        Temporary detention of individuals during the stop of an automobile by the police implicates the Fourth

Amendment, even if only for a brief period and for a limited purpose.  *Whren v. United States*, 116 S. Ct. at

1772 (*citing Delaware v. Prouse*, 99 S. Ct. 1391, 1395 (1979); *United States v. Martinez-Fuerte*, 96 S.

Ct. 3074, 3082 (1976); *United States v. Brignoni-Ponce*, 95 S. Ct. 2574, 2578 (1975)).  Once the purpose

of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the

stop caused the officer to have a reasonable, articulable suspicion that criminal activity was afoot.  *United*

*States v. Hill*, 195 F.3d 258, 264 (6th Cir.1999), *cert. denied*, 120 S. Ct. 1207 (2000), *See also United*

*States v. Mesa*, 62 F.3d 159, 162 (6th Cir.1995).

---

[7]

        Plaintiff does not contest that the license plate light was inoperable at the time of the stop.  He learned that it was
inoperable when the truck was returned to him in September 2002 (Docket No. 17, p. 39).  .

Reasonable suspicion is more than an ill-defined hunch. *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001) (*citing States v. Cortez*, 101 S. Ct. 690, 694-695 (1981)). It requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop. *Id*. (*citing Terry v. Ohio,* 88 S. Ct. 1868, 1879-1880 (1968); *States v. Cortez*, 101 S. Ct. at 694-695). The court must determine whether an officer formed the requisite reasonable, articulable suspicion during a traffic stop under a "totality of the circumstances" analysis. *Id.* (*citing United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc), *cert. denied*, 119 S. Ct. 906 (1999)). Specifically, the court must determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately. *Id.* (*citing United States v. Sokolow*, 109 S. Ct. 1581, 1587(1989)). Defendants offer four factors in support of a finding of reasonable suspicion: (1) as Defendants Reaster and Daniels approached the car, there was a strong odor of alcohol; (2) Plaintiff's eyes were glassy, hazy and red; (3) Plaintiff's speech was slurred; and (4) Plaintiff refused to exit his vehicle. As a whole, such factors, taken together with rational inferences from those facts, gave rise to reasonable suspicion that Plaintiff had been driving under the influence of alcohol. Defendants continued detention to determine whether Plaintiff was under the influence of alcohol while driving was warranted.

Plaintiff contends that the subsequent arrest was not valid because Defendant Daniels did not have probable cause to believe that he was impaired by alcohol. Specifically, Defendant Daniels did not observe any signs of erratic driving or moving traffic violations. The allegations of "slurry" speech and red eyes were merely a pretext for the arrest. Defendant Daniels argues that considering the totality of the circumstances, he had probable cause to arrest Plaintiff. A finding of probable cause was predicated merely on his observation of

14

indicia of alcohol consumption and Plaintiff's refusal to submit to a field sobriety test.

Because an arrest is the ultimate intrusion upon a citizen's liberty, an arresting officer must have more than a reasonable suspicion of illegal activity. *State v. Heston*, 280 N. E.2d 376 (1972) *cert. denied*, 93 S. Ct. 534 (1972). The officer must have probable cause to believe that the person he or she detained committed a crime. *Id.* Probable cause, a level of suspicion greater than reasonable suspicion, exists when a police officer at the moment of arrest is in possession of knowledge of the facts and circumstances, grounded in reasonable, trustworthy information and sufficient in themselves to warrant a belief by a reasonable and prudent police officer that an offense has been committed by the person to be arrested. *Id.* (*citing Beck v. Ohio*, 85 S. Ct. 223 (1964)). The existence of probable cause must be based upon a totality of the circumstances surrounding the incident. *Ornelas v. United States*, 116 S. Ct. 1657 (1996); *Illinois v. Gates*, 103 S. Ct. 2317 (1983)

For probable cause to exist that an individual was driving under the influence of alcohol, the police officer must have some reasonably articulated indicia of intoxication[8] as opposed to mere evidence of some alcohol consumption. *State v. Taylor*, 444 N.E.2d 481 (1981). Generally, the usual physical characteristics of alcohol consumption, that is, the strong odor of alcohol, bloodshot eyes, flushed face, and slurred speech, are sufficient to give rise to reasonable suspicion of intoxication. *State v. Finch*, 492 N.E.2d 1254 (1985). Nevertheless, those physical characteristics are insufficient by themselves to give rise to probable cause to arrest

---

[8]

A number of factors, including but not limited to the following, must be considered in determining whether the adequate indicia existed at the time of arrest: (1) the time and day of stop; (2) the location of the stop; (3) any indicia of erratic driving before the stop; (4) evidence of a cognizable report that the driver may be intoxicated: (5) the condition of the suspect's eyes; (6) impairments in the suspect's ability to speak; (7) the odor of alcohol coming from the interior of a car, suspect's person or breath; (8) the intensity of that odor; (9) the suspect's demeanor; (10) any actions by the suspect after the stop that might include a lack of coordination; and (11) the suspect's admission of alcohol consumption, the number of drinks had and the amount of time in which they were consumed. *State v. Evans*, 711 N. E. 2d 761, 766 fn. 2 (1998). No single factor is determinative. *Id.* All of these factors, however, taken together with the police officers experience in dealing with drunk drivers, may be taken into account by a reviewing court to determine whether the officer acted reasonably. *Id.*

an individual for driving under the influence of alcohol.  *Id.*  To have probable cause to arrest an individual for driving under the influence of alcohol, the police officer would need to have reasonably articulable evidence of impaired driving or impaired motor coordination.  *Taylor, supra.*

Defendant Daniels conceded that prior to the stop, he had no probable cause to believe that Plaintiff was under the influence of alcohol (Docket No. 22, p. 39).  However, after the stop, Defendant Daniels ascertained that Plaintiff had consumed alcohol by the odor emanating from his vehicle.  During the course of the stop, Defendant Daniels observed other indicia of intoxication.  Plaintiff had bloodshot eyes, "slurry speech" and glassy eyes (Docket No. 22, p. 40).  Plaintiff was driving at 2:30 A.M. in an area known for drug trafficking (Docket No. 22, p. 19; Docket No. 17, p. 29).  He was verbally abusive and not very polite (Docket No. 22, p. 37).  Plaintiff refused to take a field sobriety test (Docket No. 17, p. 41).  Once he existed the vehicle, Petitioner had to be restrained (Docket No. 22, p. 40).

The Magistrate finds from the totality of circumstances surrounding the arrest, there was adequate corroborative evidence that Plaintiff was intoxicated.  Defendant Daniels had reasonable grounds to believe that Plaintiff was driving under the influence.

Defendants argue that the search was the result of a lawful arrest.  A law enforcement officer may conduct a search incident to a lawful arrest under a well-established exception to the Fourth Amendment warrant requirement, *Chimel v. California*, 89 S. Ct. 2034, 2039-2040 (1969), for weapons and contraband.  *State v. Ferman*, 58 Ohio St.2d 216, 219 (1979).  A car may be searched or seized without a warrant if there are both exigent circumstances and probable cause to believe that the car will yield contraband or evidence useful for prosecution of crime.  *Coolidge v. New Hampshire*, 91 S. Ct. 2022, 2034-2035 (1971).  A lawful arrest establishes the authority to search and is not only an exception to the warrant requirement of the Fourth

16

Amendment, but is also a reasonable search under the Fourth Amendment. *United States v. Robinson*, 94 S. Ct. 467, 476 (1973). A search incident to a lawful arrest is a traditional exception to the warrant requirements of the Fourth Amendment. *Coolidge,* 91 S. Ct. at 2034-2035. Where the arrest is not valid, the search is not valid. *Id.*

The general remedy for a Fourth Amendment violation is that evidence obtained due to the unconstitutional search or seizure is inadmissible. *U.S. v. Dice*, 200 F.3d 978, 983 (6th Cir. 2000). The scope of evidence to be excluded sweeps broadly, including both "[e]vidence obtained as a direct result of an unconstitutional search or seizure," as well as evidence that is considered the "'fruit' of a prior illegality" that was "come at by exploitation of [the initial] illegality." *Id.* (*citing Segura v. United States*, 104 S. Ct. 3380, 3385 (1984); *see also New York v. Harris*, 110 S. Ct. 1640, 1643 (1990)).

Defendant Daniels claimed that once he arrested Plaintiff and placed him in custody, Defendant Reaster instituted the search of Plaintiff's vehicle (Docket No. 16, Exhibit A). Defendant Reaster claims that once Defendant Daniels arrested Plaintiff, he walked with his canine dog around the outside of Plaintiff's vehicle (Docket No. 16, Exhibit B)[9]. Clearly, the resultant search was based on Plaintiff's arrest for driving under the influence. As a matter of law, the search incident to his arrest was lawful. The arrest for drug abuse was based on "fruit" of a legally executed search and therefore the basis of a valid arrest.

### Qualified Immunity

Defendants assert that they are entitled to qualified immunity for those claims made against them in their

---

[9]

The United States Supreme Court has determined that an exterior sniff by a canine dog to detect the odor of drugs does not implicate the Fourth Amendment of the Constitution. *United States v. Place*, 103 S. Ct. 2637 (1983). A lawfully detained vehicle may be subjected to a canine check of the vehicle's exterior without the presence of a reasonable suspicion of drug related activity. *State v. Rusnak*, 696 N. E. 2d 633 (120 Ohio App. 3d 24 at 18) (1997).

individual capacities.  Since the Magistrate has determined that the stop, detention, arrest and search were lawful, there are no legally cognizable claims for which the defense of immunity must be asserted.

### Liability of Defendants Daniels, Reaster and Buchele under Ohio's Constitution

Defendants argue that the Fourth Amendment analysis is applicable to Plaintiff's claims under the Ohio Constitution.

The Ohio Supreme Court has confirmed that the wording in Section 14, Article I of the Ohio Constitution is "virtually identical" to the Fourth Amendment of the United States Constitution.  *State v. Geraldo*, 68 Ohio St.2d 120, 125, 429 N.E.2d 141 (1981) *cert. denied*, 102 S. Ct. 2038 (1981).  In fact, the Ohio Supreme Court has found that Section 14, Article I, Ohio Constitution, provides no wider prohibition against search and seizure than that found in the Fourth Amendment to the United States Constitution.  *Id*.  As a consequence thereof, proof of a violation of the Fourth Amendment dictates the conclusion of plaintiff's rights under Section 14, Article I, of the Ohio Constitution.  *Id.*

The Magistrate adopts the same disposition for Plaintiff's state law claims under Section 14, Article I of the Ohio Constitution as his federal claims.  The stop was valid, continued detention was justified, the arrest was lawful and the resulting search of Plaintiff's vehicle a natural consequence of the arrest.  As there is no violation of a clearly established right, the Magistrate need not address Defendants' claim that they are entitled to immunity.

### Plaintiff's State Law Tort Claims

Plaintiff alleges claims of false imprisonment, false arrest, malicious prosecution, slander, negligent

infliction of emotional distress[10], intentional infliction of emotional distress and pain and suffering.  Defendants contend that the claims of assault, battery, false arrest, false imprisonment, malicious prosecution, defamation and emotional distress, are barred by the applicable statute of limitations.

Initially, Defendants allege that Plaintiff's claim for defamation is barred by the applicable statute of limitations.  OHIO REV. CODE § 2305.11 (A) provides, in part:  "An action for libel, slander, malicious prosecution, false imprisonment, or malpractice. . . . shall be brought within one year after the cause thereof accrued. . . ."  *Haller v. Phillips*, 69 Ohio App.3d 574, 577, 591 N.E.2d 305, 306 (1990).  In Ohio, the statute of limitations for defamation, be it libel or slander, is one year.  *Miller v. Ohio Rehabilitation Services Commission*, 86 Ohio Misc.2d 97, 100, 685 N.E.2d 616, 618 (1997); OHIO REV. CODE § 2305.11 (A) (Thomson/West 2005).  For defamation as a result of slander, the statute of limitations begins to run from the time the words were spoken, whether the plaintiff had knowledge of the fact or not.  *Id.* (*citing Lyons v. Farmers Insurance Group of Companies,* 67 Ohio App.3d 448, 587 N.E.2d 362 (1990)).

The alleged remarks which gave rise to Plaintiff's allegations that his "good name was slandered in the community" arise from the publication of his arrest and indictment in the *News-Messenger* (Docket No. 17, pp. 60-61).  Although Plaintiff does not specify a time period within which such events occurred, the claims against him were dismissed on August 21, 2002.  Plaintiff was indicted for possession of cocaine on April 19, 2002 (Docket No. 16, Exhibit D).  He complained that his friends and co-workers joked with him about his "bust" (Docket No. 17, pp. 60-61).  The events giving rise to this claim obviously occurred after his arrest but prior

---

10

Plaintiff alleges that Defendants negligently inflicted emotional distress.  The Ohio Supreme Court has limited recovery for claims alleging negligent infliction of emotional distress to situations in which the plaintiff is a bystander to an accident or is in fear of physical consequences to his own person.  *Gearing v. Nationwide Insurance Company*, 76 Ohio St.3d 34, 40, 665 N.E.2d 1115, 1120 (1996),

to dismissal of the claims against him.  Plaintiff did not file his Complaint until February 26, 2004, well beyond the one-year period in which OHIO REV. CODE § 2305.11(A) permits an action for slander to be commenced.

Under Ohio law, "'[t]he elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the *261 prosecution in the favor of the accused.' " *Thacker v. City of Columbus,* 328 F. 3d 244, 260-261 (6ᵗʰ Cir. 2003) (*citing Trussell v. General Motors Corporation,* 53 Ohio St.3d 142, 559 N.E.2d 732, 736 (1990); *see also Rogers v. Barbera,* 170 Ohio St. 241, 164 N.E.2d 162 (Syllabus) (1960)).  A cause of action for malicious prosecution does not accrue until the underlying criminal proceeding has been terminated in the plaintiff's favor. *McCune v. City of Grand Rapids,* 842 F. 2d 903, 906 (6ᵗʰ Cir. 1988).

Plaintiff's cause of action for malicious prosecution accrued on August 21, 2002 when the claims against him were terminated.  He filed this case on February 26, 2004, more than one year after the cause of action accrued.  Accordingly, Plaintiff's claim for malicious prosecution is barred by the applicable statute of limitations.

In Ohio, a successful false arrest claim requires proof of "(1) a detention of the person, and (2) an unlawful detention." *Thacker,* 328 F.3d at 261 (*citing Faulkner v. Faulkner,* 2000 WL 5910, at *1 (Ohio App. 6 Dist. 2000)).  The essence of the tort of false arrest is the depriving of a person of his or her liberty without lawful justification. *Id.* (*citing Tucker v. Kroger,* 133 Ohio App.3d 140, 726 N.E.2d 1111, 1115 (1999)).  The statute of limitations for a claim of false arrest is one year.  OHIO REV. CODE § 2305.11(A); *Mayes v. City of Columbus,* 105 Ohio App.3d 728, 746, 664 N. E. 2d 1340, 1352 (1995).  "False arrest" includes false imprisonment; therefore, the one year statute of limitations in OHIO REV. CODE § 2305.11(A) applies. *Id.*

(*citing Rogers v. Barbera*, 170 Ohio St. 241, 10 O.O.2d 248, 164 N.E.2d 162 (1960); *Alter v. Paul*, 101 Ohio App. 139, 135 N.E.2d 73 (1955); *See, also*, *Haller v. Borror*, Franklin App. No. 93APE12-1657, unreported, 1994 WL 265660, June 14, 1994)).

Even if the Magistrate had not determined that Defendants' temporary detention of Plaintiff for purposes of determining if further criminal activity was afoot was justified, his claim is barred by the applicable statute of limitations.  At best, the cause of action accrued on March 1, 2002 when Defendants detained Plaintiff for purposes of determining if he was intoxicated.  He had one year from March 1, 2002 to bring his cause of action for false imprisonment.  However, Plaintiff did not file a claim against Defendants for such acts until February 26, 2004.  Since approximately two years expired between the cause of action and the filing of Plaintiff's Complaint, the claim for false arrest must be dismissed.        OHIO REV. CODE § 2305.111 is the appropriate statute of limitations for assault and battery claims.  Section 2305.111 states that:  "An action for assault or battery shall be brought within one year after the cause of the action accrues."  A cause of action for assault or battery accrues on the date on which the alleged assault or battery occurred.  OHIO REV. CODE § 2305.111 (A).


The Magistrate finds that the alleged assault would have occurred during the arrest on March 1, 2002.  Defendants are entitled to summary judgment since Plaintiff filed his claim for assault and battery more than the one year provided by law within which to file a claim.

The applicable statute of limitations for a claim of intentional infliction of emotional distress under Ohio law is the four years limitation period in OHIO REV. CODE § 2305.09.  *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 375, 453 N.E.2d 666, 672 (1983).  Thus, Defendants do not argue that Plaintiff's claim is barred by the applicable statute of limitations.  Instead, Defendants claim that Plaintiff's allegations do not meet the requisite

standard for recovery.

To establish a claim of intentional infliction of emotional distress under Ohio law, a plaintiff must show: (1) the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to plaintiff; (2) the actor's conduct was so extreme as to go beyond all possible bounds of decency and was such that it can be considered utterly intolerable in a civilized community; (3) the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person could be expected to endure it. *Garcia v. ANR Freight System*, 942 F. Supp. 351, 359 (N.D. Ohio 1996) *(citing Tschantz v. Ferguson*, 97 Ohio App.3d 693, 702, 647 N.E.2d 507 (1994) *motion to certify denied*, 71 Ohio St. 3d 1476, 645 N. E. 2d 1256 (1995); *Koenig v. City of Dayton*, 28 Ohio App.3d 70, 74, 502 N.E.2d 233 (1985); *Pyle v. Pyle*, 11 Ohio App.3d 31, 34, 463 N.E.2d 98 (1983)).

To recover for intentional infliction of emotional distress under Ohio law, a plaintiff must show that "(1) the defendant intended to cause emotional distress, or knew or should have known that the actions taken would result in serious emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious." *Thatcher v. Goodwill Industries of Akron*, 117 Ohio App.3d 525, 541-542, 690 N.E.2d 1320, 1331 (1997); *see also Pyle*, 11 Ohio App.3d at 34; 103).  Liability is imposed where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  *Id.*

In this case Plaintiff cannot show that Defendants' behavior was "extreme and outrageous," which, according to the Ohio courts, must go beyond all possible bounds of decency and be regarded as atrocious and

utterly intolerable in a civilized community. *Yeager*, 6 Ohio St.3d at 375. Viewed in the light most favorable to him, Plaintiff claims only that Defendants humiliated, ridiculed and embarrassed him. Such acts are not contemplated under Ohio law as sufficient to support a claim for intentional infliction of emotional distress.

In conclusion, Plaintiff's claims for assault, battery, false arrest, false imprisonment, malicious prosecution, defamation and of slander, malicious prosecution and false imprisonment are barred by the statute of limitations and therefore dismissed. Plaintiff has failed to present sufficient evidence that support his claim for intentional infliction of emotional distress. This claim is also dismissed.

For the foregoing reasons, Defendants' Motion for Summary Judgment (Docket No. 15) is granted.

**IT IS SO ORDERED**.


/s/Vernelis K. Armstrong
Vernelis K. Armstrong
United States Magistrate Judge

23